UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAJA P.,[1]<br><br>Plaintiff<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,[2]<br><br>Defendant. | Case No. 2:19-cv-02018-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Raja P. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 10 and 27] and briefs addressing disputed issues in the case [Dkt. 17 ("Pl. Br."), Dkt. 23 ("Def. Br."), Dkt. 26 ("Reply")]. The matter is now ready for

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party.

[2] Andrew M. Saul, now Commissioner of the Social Security Administration, is substituted as defendant for Nancy A. Berryhill. *See* Fed. R. Civ. P. 25(d).

decision. For the reasons discussed below, the Court finds that this matter should be affirmed.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed applications for SSI and DIB alleging disability due to a head injury and related seizures. [Dkt. 15, Administrative Record ("AR") 64.] Plaintiff's applications were denied initially, on reconsideration, and after a hearing before Administrative Law Judge ("ALJ") Loranzo Fleming. [AR 1-6, 15-24.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 416.920(b)-(g)(1). At step one, the ALJ found that Plaintiff, had not engage in substantial gainful activity for a period of at least twelve months before she returned to work on February 21, 2017. [AR 17-18.] At step two, the ALJ found that Plaintiff suffered from post-subdural hematoma and deep venous thrombosis. [AR 18.] The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 21.]

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work with specific limitations. [AR 20.] Applying this RFC, the ALJ found at step four that Plaintiff could perform her past relevant work as a medical secretary and thus she is not disabled. [AR 23.] Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. [AR 1-6.] This appeal followed.

## III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

### A. The ALJ Properly Considered the Mental Impairment Evidence

Plaintiff asserts that the ALJ improperly rejected her psychiatric treating sources, Marriage and Family Therapist Ms. Gillis and psychiatrist Joyce A. Kovelman, Ph.D., both of whom completed questionnaires indicating that Plaintiff was totally disabled due to mental impairments. [Dkt. 17 at 6-11.] The Commissioner contends that the ALJ's findings are supported by substantial evidence and that proper weight and evaluation were given to the opinions of those sources. The Court finds that a remand or reversal on this basis is not warranted.

#### 1. Federal Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *see also* 20 C.F.R. § 404.1527. In general, a treating physician's opinion is entitled to more weight than an examining physician's opinion and an examining physician's opinion

is entitled to more weight than a nonexamining physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).[3]

An ALJ must provide clear and convincing reasons supported by substantial evidence to reject the uncontradicted opinion of a treating or examining physician. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). Where such an opinion is contradicted, however, an ALJ may reject it only by stating specific and legitimate reasons supported by substantial evidence. *Bayliss*, 427 F.3d at 1216; *Trevizo*, 871 F.3d at 675. The ALJ can satisfy this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (when a treating physician's opinion is not given controlling weight, factors such as the nature, extent, and length of the treatment relationship, the frequency of examinations, the specialization of the physician, and whether the physician's opinion is supported by and consistent with the record should be considered in determining the weight to give the opinion).

---

[3] For claims filed on or after March 27, 2017, the opinions of treating physicians are not given deference over the opinions of non-treating physicians. *See* 20 C.F.R. § 404.1520c (providing that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"); 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). Because Plaintiff's claims for SSI and DIB were filed before March 27, 2017, the medical evidence is evaluated pursuant to the treating physician rule discussed above. *See* 20 C.F.R. § 404.1527.

## 2. Background

At the time of her October 2014 application for benefits, Plaintiff was a 32-year-old female with a history of four recent brain surgeries. [AR 7658.] On July 25, 2014, Plaintiff had a vaginal delivery of her baby under epidural anesthesia. After the delivery, she developed a right sided subdural hematoma resulting in her first brain surgery in August 2014. While in the recovery room following surgery, Plaintiff had a seizure after which she was placed in an induced coma. During the surgery a shunt was placed on the brain and when it was removed, Plaintiff had another seizure. [AR 7658.] About four days later, she developed another subdural hematoma and she had another brain surgery with placement of a shunt. Finally, in September 2014, Plaintiff went to a rehabilitation facility where she developed a blood clot in her right leg. She was again taken to the hospital where she developed a rare blood infection possibly from her shunt. Plaintiff remained in the hospital for approximately one month. [AR 7658.]

Following her hospitalizations and application for benefits, the record indicates that Plaintiff began receiving mental health treatment. As relevant here, Plaintiff began seeing Zoe Gillis, a Marriage and Family Therapist ("M.F.T.") on December 16, 2014, five months after the birth of her second child. [AR 7627-7629.] During treatment, Plaintiff primarily complained of difficulty caring for her baby due to her headaches and she cited some problems with depression, suicidal thoughts, and thoughts of harming her child. [AR 7627.]

In September 2015, Plaintiff transferred her treatment from Ms. Gillis to Dr. Joyce Kovelman who treated Plaintiff on a varying once a week or twice a month basis through December 2016. [AR 7808-7842, 7829, 7831.] In sessions with Dr. Kovelman, Plaintiff discussed various life stressors, however many of the handwritten treatment notes are difficult to read. [AR 22.] On October 3, 2015, Dr. Kovelman completed a mental capacity questionnaire. [AR 7634-7637.] Dr. Kovelman opined that due to her depression, Plaintiff had serious limitations in her

ability to carry out detailed instructions, deal with the stress of work, and marked difficulty in understanding or remembering detailed instructions. Dr. Kovelman also assessed that Plaintiff had serious limitations in her ability to travel in unfamiliar places or use public transportation. [AR 7636.]

In 2017, two years after Ms. Gillis last treated Plaintiff, Ms. Gillis completed a mental capacity questionnaire evaluating Plaintiff's capacity as of 2015. [AR 7630.] Ms. Gillis reported that Plaintiff had marked deficits in her ability to maintain regular work attendance, work without supervision, maintain a consistent work pace, perform detailed tasks and travel to unfamiliar places.

Overall, both Dr. Kovelman and Ms. Gillis noted that Plaintiff would be unable to work due to marked deficits in psychiatric functioning and that her mental impairments would cause her to be absent from work more than four times a month during the closed period of October 2014 to February 2017. [AR 7630-31.] Plaintiff resumed full-time work on February 21, 2017. [AR 18.]

### 3. The ALJ's Decision

The ALJ rejected the ultimate opinions of Dr. Kovelman and Ms. Gillis which effectively stated that Plaintiff was unable to sustain any work activity due to her anxiety/depression. [AR 22.] The ALJ stated as follows:

> There is no evidence the claimant required any inpatient psychiatric treatment and she only treated with Dr. Kovelman and therapist Gillis on an intermittent outpatient basis between 2015 and 2016. While Kovelman and Gillis both effectively assessed the claimant with moderate to severe limitations in several areas of work-related mental functioning, such assessments are inconsistent with the available evidence and the apparently mild degree of clinical treatments and findings. As noted above, Dr. Kovelman provided largely handwritten treatment records and no formal mental status testing and her treatment records appear to reflect little more than general discussions with the claimant about life stressors. The undersigned also notes that Gillis's reports are unaccompanied by any formal treatment records, her assessments regarding the claimant's mental work limitations appear to reflect little more than the claimant's subjective allegations and, as

noted above her 2017 letter was written almost two years since Gillis last reported treating the claimant. There is no indication either treating source referred the claimant for intensive treatment or prescribed strong psychiatric medications. As such, the undersigned rejects the opinions of these sources as inconsistent with the record as a whole, internally inconsistent with their own mild findings and treatment records, and generally inconsistent with the claimant's testimony at the hearing regarding her issues with depression and the fact that she was ultimately able to return to work.

[AR 26.]

### 4. Substantial Evidence Supports the ALJ's Reasoning

The ALJ provided several specific and legitimate reasons for rejecting the opinions of Dr. Kovelman and Ms. Gillis that Plaintiff was permanently and totally disabled from a psychiatric standpoint. As the ALJ pointed out, the psychiatric opinions provided by Dr. Kovelman and Ms. Gillis were not persuasive because they were not supported by objective clinical or diagnostic findings; overly reliant on Plaintiff's subjective self-reports about the extent of her limitations; and inconsistent with the medical evidence of record, including the mild clinical findings and the providers' own treatment notes. [AR 22.]

As a preliminary matter, Ms. Gillis, a therapist, is not an acceptable medical source and her opinion may therefore be afforded less weight. *See* 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect ... what you can still do despite impairment(s), and your physical or mental restrictions."); *Michalski v. Colvin*, 2016 U.S. Dist. LEXIS 119258, 2016 WL 4585770, at *4 (N.D. Cal. Sept. 2, 2016) (marriage family therapist ("MFT") opinion entitled to less weight). Thus, the ALJ need only provide germane reasons for discounting her statements. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). Nonetheless, the ALJ provided several specific and legitimate reasons for rejecting the opinions of Dr. Kovelman and Ms. Gillis.

7

First, without supporting mental status tests or other clinical or objective testing, the ALJ correctly rationalized that Ms. Gillis and Dr. Kovelman relied quite heavily on Plaintiff's subjective self-reports regarding the extent of her mental work limitations. [AR 22.] "If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *see Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Because the ... record supports the ALJ in discounting [the claimant's] credibility, ... he was free to disregard [the treating physician's] opinion, which was premised on [the claimant's] subjective complaints.").

Here, the ALJ concluded that Plaintiff's subjective symptoms were not entirely credible and those subjective symptoms, as reported by Plaintiff, were the primary basis of the opinions provided by Dr. Kovelman and Ms. Gillis. Although Ms. Gillis reported that during their nine-month therapy relationship Plaintiff suffered from "major depressive disorder" which rendered her "unable to perform many of the basic daily tasks it takes to simply function" (AR 7626-27), Ms. Gillis did not include any treatment notes with her mental capacity questionnaire and accompanying two-page letter detailing Plaintiff's symptoms. [AR 7627-28.] Unlike Ms. Gillis, Dr. Kovelman did support her mental health capacity report with treatment notes, however, those notes consisted largely of Plaintiff's "self-reported" life stressors with no reference to formal mental status testing. [AR 7808-7809.] An ALJ may discount a treating physician's opinion when it is based on subjective symptoms that have been discredited. *Tonapetyan*, 242 F.3d at 1149 (a treating physician's opinion based on subjective complaints of a claimant whose credibility has been discounted can be properly disregarded). The ALJ's adverse credibility findings are a proper basis for rejecting the limitations opined by Dr. Kovelman and Ms. Gillis.

8

Second, the ALJ properly concluded that the psychiatric opinions were inconsistent with the medical record which is a valid reason to discount a medical source's opinion. For example, the ALJ gave the greatest weight to the opinion of neurological consultative examiner Robert Moore, M.D. [AR 19, 21-23, 7602-08.] Dr. Moore performed a neurological evaluation of Plaintiff on June 1, 2015. [AR 7602.] Upon examination, Plaintiff presented with a "history of a frontal craniotomy [due to] the development of a right frontoparietal subdural hematoma." [AR 7602.] Plaintiff reported that she was a bit more forgetful now than she was in the past, but she is able to go out alone and handle money." [AR 7602.] Dr. Moore determined that Plaintiff had no mental deficits and she retained normal sensation, strength, speech, and coordination with only a mildly antalgic gait. [AR 19, 7603-05.] He also concluded that the results of Plaintiff's "mini-mental status examination" were "relatively unremarkable." Based on his examination, Dr. Moore opined that Plaintiff would have less than slight difficulty performing complex commands and tasks, could follow simple commands and tasks, and could handle funds. [AR 7605.] The findings by Dr. Moore stand in stark contrast to the opinions of Ms. Gillis and Dr. Kovelman who found that Plaintiff's mental impairments rendered her totally disabled.

In addition to relying on Dr. Moore's opinion, the ALJ noted that other than the unsupported opinions of Dr. Kovelman and Ms. Gillis, there was nothing in the record to suggest that Plaintiff's mental impairments caused more than a mild deficit in any area of functioning. Indeed, at a follow-up visit for her blood clots on August 13, 2015, Plaintiff reported that she had "occasional trouble sleeping," but she denied "severe depressive symptoms." [AR 7654.] As of April 26, 2015, Plaintiff was no longer taking Ambien. [AR 7698.] On February 18, 2016, Plaintiff again denied "severe depressive symptoms." [AR 7817.] The ALJ legitimately concluded that the opinions of Dr. Kovelman and Ms. Gillis were outliers unsupported by the other evidence in the record, and thus entitled to less weight.

This was a specific and legitimate reason to discount their opinions. *See Tonapetyan*, 242 F.3d at 1149 (examining physician's opinion alone constitutes substantial evidence because it rests on his own independent examination of the claimant).

Third, the ALJ found the psychiatric opinions of Ms. Gillis and Dr. Kovelman unreliable because they were unsupported by their own treatment records. [AR 22.] An ALJ need not accept an opinion which is 'brief and conclusory in form with little in the way of clinical findings to support [its] conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (*quoting Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)). Where a conclusory opinion is "based on significant experience" with a claimant and is "supported by numerous records," it is entitled to greater weight than that given to an otherwise unsupported and unexplained checkbox form. *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). As mentioned above, Ms. Gillis failed to include any treatment notes or records with her mental capacity questionnaire. Instead, Ms. Gillis submitted a brief letter explaining the despondency Plaintiff experienced after the complicated birth of her child. However, the letter submitted by Ms. Gillis contains no rationale or reference to treatment notes in support of the bald conclusion that Plaintiff was psychiatrically unable to work during the closed period. *See Rico v. Berryhill*, No. 8:18-CV-00275-GJS, 2018 WL 6198460 (C.D. Cal. Nov. 28, 2018) (physician's treating letter was not entitled to any greater weight than that given to a conclusory, unsupported checkbox opinion).

Moreover, as the ALJ noted, the bulk of Dr. Kovelman's treatment notes consisted of Plaintiff's self-reported life stressors that appeared largely situational based on taking care of an infant and problems related to paternity and child support disagreements with her child's father. [AR 7834, 7835.] When Plaintiff initially presented to Dr. Kovelman in September 2015, she said she could not lift and hold her baby herself, and she was therefore scared to be alone with the baby. [AR 7808-

10

1  09.] Nonetheless, Dr. Kovelman also observed that Plaintiff was articulate,
2  cooperative, and very willing to help herself. [AR 7809.] Dr. Kovelman's
3  treatment notes also indicated that Plaintiff had headaches, trouble sleeping, and
4  issues with her boyfriend, who lived in Panama. [AR 7833-34, 7837-38.] Dr.
5  Kovelman noted that Plaintiff was seeing a neurologist about her headaches and
6  related symptoms, but Dr. Kovelman never referred her for additional treatment.
7  [AR 7835, 7838.] Nonetheless, these treatment notes also indicated continued
8  improvement; including that Dr. Kovelman observed that despite Plaintiff's claims
9  of "brain fog" and memory loss (AR 7835), she had no problems with memory or
10 cognition in speech. [AR 7836.] Plaintiff was also able to drive to the Panama
11 consulate in Long Beach and spoke of traveling to Panama to see her boyfriend.
12 [AR 7824.] She also applied for Section 8 housing, to which she was eventually
13 accepted, moving into an apartment with her two children. [AR 7821, 7827.]

14       The content of Dr. Kovelman's treatment notes undermined her opinion that
15 Plaintiff was seriously limited in traveling in unfamiliar places, setting realistic
16 goals, and making plans independently of others. [AR 7836.] Further, missing from
17 Dr. Kovelman's treatment records was any evidence of actual treatment. It cannot
18 be overstated here that despite opining that Plaintiff suffers from serious
19 impairments in several areas of functioning, Dr. Kovelman did not refer Plaintiff for
20 more intensive treatment with a medical doctor or for treatment with prescription
21 medications. Indeed, when asked to list Plaintiff's prescribed medications on the
22 mental residual functional capacity questionnaire Dr. Kovelman wrote "I am not an
23 MD!" [AR 7839.] Given these inconsistencies, the ALJ was justified in rejecting
24 the unsupported opinion of Dr. Kovelman.

25       Overall, the ALJ cited specific and legitimate reasons supported by
26 substantial evidence for rejecting the treating opinions of Ms. Gillis and Dr.
27 Kovelman and reversal is not warranted.
28

11

**B.	The ALJ's Credibility Determination is Supported by at Least One Clear and Convincing Reason**

Next, Plaintiff contends that the ALJ failed to provide sufficient reasons for rejecting her testimony regarding her subjective symptoms and functional limitations. [Dkt. 17 at 11-16.]

"Where, as here, an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (internal citation and quotations omitted). Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if she "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina*, 674 F.3d at 1115 (internal citation and quotations omitted).

"The ALJ may consider many factors in weighing a claimant's credibility, including (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition." *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ provided several reasons for discounting Plaintiff's subjective complaints. First, the ALJ found that Plaintiff's statements concerning her symptoms and functional limitations were unsupported by the objective medical evidence. [AR 22.] Specifically, the ALJ exhaustively analyzed Plaintiff's medical records and found them to be inconsistent with the allegation that her subjective

symptoms remained chronic for a period of twelve months or longer. [AR 22.] The ALJ noted that Plaintiff suffered serious complications from the birth of her child in July 2014. During child birth, Plaintiff received a spinal anesthetic epidural injection during labor which caused Plaintiff to develop a subdural hematoma (bleeding outside of the brain). [AR 18.] This complication ultimately led to four corrective hematoma brain surgeries in August 2014. Plaintiff was hospitalized for approximately one month while she recovered and underwent physical and occupational therapy. [AR 18.] During her hospitalizations, Plaintiff reported that she had a couple of seizures, but after leaving the hospital she had no subsequent episodes of loss of consciousness. [AR 7603.] In September 2014, shortly after her discharge, Plaintiff experienced leg swelling and she was diagnosed with deep vein thrombosis and prescribed blood thinning medications. [AR 18.] On October 3, 2014, Plaintiff underwent removal of the shunt and shunt catheters which remained after her brain surgeries. A subsequent December 2014 head CT scan was normal. [AR 18.]

Despite the hospitalizations and follow-up visits that resulted from these surgeries, the ALJ noted that there was no indication that the conditions related to her 2014 medical issues resulted in chronic complications or ongoing problems. In February 2015, Plaintiff reported feeling stable, denied irregular seizures, and reported only low-level headaches. Plaintiff did not receive any additional treatment until April 2015, when she visited the emergency room complaining of a headache. In May 2015, a brain CT scan showed signs of her prior craniotomy but no other abnormalities. Plaintiff was prescribed Norco for pain relief. Throughout 2015 and 2016, Plaintiff continued to report to the emergency room with intermittent complaints of migraine headaches. [AR 7719, 7733]. However, at each visit, her headaches were designated as benign. [AR 7710, 7728, 7744, 7759.] At her September 7, 2015 hospital visit, Plaintiff reported that while she had a history of migraines, "it has been a while since she had one this bad." [AR 7734.] On March

7, 2016, Plaintiff again visited the emergency room with a migraine headache. Plaintiff, however, left the hospital before receiving medical attention. [AR 7767.]

In weighing the headache evidence, the ALJ gave great weight to the opinion of examining neurologist Dr. Moore who found that Plaintiff could perform the equivalent of medium work and that she "would have less than slight difficulty following complex commands and performing complex tasks." [AR 7605.] Notably, Dr. Moore's opinion took into consideration Plaintiff's complaints of "headaches 2-4 times a week that last hours at a time." [AR 7603.] In considering this opinion and the other record evidence, the ALJ found that Plaintiff's subjective complaints were exaggerated because the record does not support her allegations that she was disabled from all work activity between 2014 and 2017, or that chronic issues related to her 2014 hematoma, deep vein thrombosis, and headaches lasted for 12 continuous months. This was an accurate finding. The Court could find no objective evidence in the medical records that supports a finding that Plaintiff's symptoms endured at a severe level for at least 12 months.

Second, in addition to the objective medical evidence, the ALJ also discounted Plaintiff's subjective complaints of pain based on her work history, noting that Plaintiff was able to return to "full-time work activity as of February 2017 as a superior court employee performing, by her own admission, moderately detailed or complex tasks." [AR 22.] An ALJ may properly consider the circumstances of a claimant's return to work following successful treatment in evaluating subjective complaints of pain. *See, e.g., Guzman v. Colvin*, No. 1:13-cv-01243-SKO, 2015 U.S. Dist. LEXIS 1068, 2015 WL 75129, at *9 (E.D. Cal. Jan. 6, 2015) (finding ALJ properly considered evidence that claimant returned to work after successful treatment for back condition and no indication that she could not return to work after a second injury had healed properly). While Plaintiff argues that her return to work is irrelevant because she is seeking benefits for a closed period of disability, her return to work is particularly persuasive here because the

14

1 record demonstrates that following her serious but limited hospitalizations in 2014, Plaintiff's symptoms continuously improved throughout the closed period. Plaintiff's return to work is further evidence of her "apparently quick recovery," as found by the ALJ. [AR 23.]

Further, although stated only briefly, the ALJ also found that following her 2014 surgeries Plaintiff's course of treatment was routine with no evidence of any treatment lasting in excess of 12 months. [AR 23.] Specifically, the ALJ noted that there was no evidence of regular usage of strong pain medications that would significantly impair Plaintiff's ability to function. Although Plaintiff was intermittently prescribed Norco and Vicodin for her migraines, there was nothing in the record to suggest that Plaintiff relied on these medications more than occasionally. Further, despite opinion evidence from her therapist and psychiatrist that Plaintiff suffered from several marked impairments in mental functioning due to anxiety/depression, there is little evidence that Plaintiff was prescribed anti-depressants or other related medications during the closed period.[4] An ALJ may properly rely on the fact that only routine or conservative treatment has been prescribed. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

Finally, the ALJ also found that Plaintiff's daily activities were inconsistent with her allegations that her symptoms lasted in excess of 12 months. The ALJ's conclusion here is supported by substantial evidence. Plaintiff's daily activities bear on her credibility if the level of activity is inconsistent with her claimed limitations.

---

[4] On a September 15, 2015 client intake form submitted to Dr. Kovelman's office, Plaintiff reported that she was taking a nightly dosage of the anti-depressant Remeron. [AR 7807.] However, Remeron is not listed as a prescribed medication in Plaintiff's medical or hospital records. [See e.g. AR 7689 (August 13, 2015 medical record listing current medications as "famotidine 20 mg tablet, Keppra 500 mg tablet, Lovenox 60 mg/0.6 ml subcutaneous syringe, Norvasc 2.5. tablet, Rocephin 2 gram solution for injection, senna 8.6. mg tablet, Tegretol 200 mg tablet, tramadol 50 mg tablet."]

15

1  *See Reddick*, 157 F.3d at 722.  Thus, an ALJ may rely on a Plaintiff's daily activities
2  to support an adverse credibility determination only when those activities either
3  "contradict [the plaintiff's] other testimony," or "meet the threshold for transferable
4  work skills"; *i.e.*, where she "is able to spend a substantial part of . . . her day
5  performing household chores or other activities that are transferable to a work
6  setting."  *Orn*, 495 F.3d at 639; *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir.
7  1996).  However, a claimant need not be "utterly incapacitated to be eligible for
8  benefits, and many home activities may not be easily transferable to a work
9  environment where it might be impossible to rest periodically or take medication."
10 *Id.*; *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  The Ninth Circuit has
11 "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily
12 activities, such as grocery shopping, driving a car, or limited walking for exercise,
13 does not in any way detract from her credibility as to her overall disability."
14 *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

15       Contrary to Plaintiff's contention, the ALJ need not articulate how Plaintiff's
16 activities of daily living are transferable to a work setting so long as those activities
17 contradict Plaintiff's other testimony.  *Orn*, 495 F.3d at 639.  Here, the ALJ
18 specified which of Plaintiff's daily activities were inconsistent with the degree of
19 limitation she alleged; specifically, Plaintiff testified that following her October
20 2014 brain surgeries, she spent the next two years in bed most of the day.  [AR 54.]
21 Despite her allegations that she was bed ridden for nearly two years, the ALJ noted
22 that in 2015 Plaintiff requested medical clearance to travel.  There was further no
23 evidence to suggest that Plaintiff was unable to drive, care for her personal needs,
24 care for her young children with assistance, or perform daily living activities and
25 household chores as needed.  Plaintiff also regularly went to weekly or biweekly
26 appointments with her therapist/psychiatrist.  The ALJ properly identified these
27 activities as inconsistent with Plaintiff's assertions about the severity of her
28 limitations.  Accordingly, the ALJ properly determined that, to the extent Plaintiff

16

alleged that she experienced disabling symptoms, her self-reported activities of daily living render her allegations less than fully credible.

Given the above, the Court concludes that Plaintiff has failed to show error with respect to the ALJ's credibility determination.

## C. Step Four Finding

As a final matter, Plaintiff argues that the ALJ's finding at step four that she could perform her past relevant work is not supported by substantial evidence. [Dkt. 17 at 16-17.]

At step four of the disability determination, it is the claimant's burden to demonstrate she cannot perform her past relevant work. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008) (citations omitted); *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). If a claimant can perform her past relevant work, then she is not disabled. 20 C.F.R. § 404.1520(e); *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001).

Here, the ALJ found that Plaintiff had the RFC to perform medium work with additional limitations, and the VE testified that a hypothetical individual with such an RFC could perform Plaintiff's past relevant work as a medical secretary. [AR 58-59.] In arguing error at step four, Plaintiff essentially restates her prior arguments, contending that the ALJ should have included the additional limitations opined by her therapist/psychiatrist in the hypothetical question to the vocational expert. However, an ALJ is not obliged to accept as true limitations alleged by Plaintiff and may decline to include such limitations in the vocational expert's hypothetical if they are not supported by sufficient evidence. *See Martinez v. Heckler*, 807 F.2d 771 (9th Cir. 1986); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Marquez v. Saul*, No. 2:19-CV-00630, 2020 U.S. Dist. LEXIS 81675 (C.D. Cal. May 8, 2020) ("A claimant fails to establish that a Step 5 determination is flawed by simply restating argument that the ALJ improperly

discounted certain evidence, when the record demonstrates the evidence was properly rejected.")

As discussed above, the Court concludes that the ALJ did not err in the evaluation of Plaintiff's testimony or the mental impairment evidence, and, in turn, did not err at step four of the sequential evaluation. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) ("In arguing the ALJ's hypothetical was incomplete, [the claimant] simply restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts. As discussed above, we conclude the ALJ did not.").

## V.   CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: May 29, 2020          _____
                             GAIL J. STANDISH
                             UNITED STATES MAGISTRATE JUDGE